**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                              :
LOUIS LAYTON COLSTON,         :
                              :   Civil Action No. 04-3209 (GEB)
            Plaintiff,        :
                              :
        v.                    :        O P I N I O N
                              :
CORRECTIONAL MEDICAL          :
SERVICES, et al.,             :
                              :
            Defendants.       :
_____:
```

**APPEARANCES:**

Paul G. Nittoly, Esq.
Mark R. Galdieri, Esq.
Matthew Christopher Moench, Esq.
Drinker Biddle & Reath
500 Campus Drive
Florham Park, NJ 07932
Attorneys for Plaintiff

Sean X. Kelly, Esq.
Brian D. Pagano, Esq.
Marks, O'Neill, O'Brien & Courtney
Cooper River West
6981 N. Park Drive, Suite 300
Pennsauken, NJ 08109
Attorneys for Defendants Correctional Medical Services,
Myriam Sterling, Debra Carroll, Rizana Hamid, George Achebe, and
Adedayo Odunsi

Daniel Michael Vannella, Esq.
New Jersey Division of Law
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, NJ 08625
Attorney for Defendants Devon Brown, Lydell Sherrer, and
Roy Hendricks

**BROWN, Chief Judge**

Plaintiff, Louis Layton Colston, was a New Jersey state prisoner at the time he filed this complaint, pro se, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983.  Since the filing of the complaint, counsel has been appointed to represent Plaintiff.   On November 24, 2009, counsel for Plaintiff filed an amended complaint (docket entry 74).  Two motions to dismiss were filed thereafter, which remain pending on the docket, and which are addressed in this Opinion.

The Court has reviewed all submissions and has decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the following reasons, the motion to dismiss filed on February 26, 2010 by the so-called "State Defendants" (defendants Brown, Sherrer, and Hendricks) will be deemed withdrawn.  The motion to dismiss, and in the alternative for summary judgment filed on April 30, 2010 by the State Defendants, will be granted.

## BACKGROUND

### A.   Procedural History

Plaintiff filed his original complaint pro se on July 6, 2004 against defendants New Jersey State Department of Corrections ("DOC"), Correctional Medical Services ("CMS"), Dr. Sterling, and Debra Carroll.  On July 30, 2004, this Court issued an order granting Plaintiff's request to proceed in forma

2

pauperis, dismissing the DOC from the action, and allowing the case to proceed past sua sponte screening against defendants CMS, Sterling, and Carroll (docket entry 3).

On October 18, 2004, defendants Sterling and Carroll filed an answer to the complaint (docket entry 8).  Plaintiff's motion for pro bono counsel was denied on November 10, 2004 (docket entry 10), and Plaintiff's motion for reconsideration of that denial was denied on March 17, 2005 (docket entry 14).

On April 25, 2005, defendants CMS, Sterling, and Carroll filed a motion for summary judgment (docket entry 15).  On January 31, 2006, defendants' motion for summary judgment was granted (docket entry 19).  Plaintiff moved for reconsideration (docket entry 20) and was denied (docket entry 23).

Plaintiff appealed the granting of summary judgment to the Court of Appeals for the Third Circuit (docket entry 24).  On December 26, 2007, the Court of Appeals entered a mandate vacating the grant of summary judgment and remanding back to this District Court.  The Court of Appeals held that the District Court had abused its discretion in denying Plaintiff's motion for counsel, and vacated entry of summary judgment (docket entry 33).

On January 4, 2008, the case was reassigned to the undersigned, and on January 23, 2008, this Court granted the appointment of pro bono counsel for Plaintiff (docket entries 34,

3

35).  On September 29, 2008, Plaintiff's counsel entered an appearance on the case (docket entry 45).

On May 19, 2009 and September 17, 2009, pretrial scheduling orders were entered allowing for amended pleadings and discovery (docket entries 62, 68).  On November 16, 2009, the Hon. Madeline Cox Arleo, U.S. Magistrate Judge, held a status conference. According to Plaintiff, at the conference Plaintiff's request to file and serve an amended complaint naming the "State Defendants" (defendants Brown, Hendricks, and Sherrer) was granted, and Judge Arleo "recognized Mr. Colston's right to bring these claims at this time as a result of the initial wrongful denial of his right to counsel."  (Plaintiff's Brief in Opposition to Motion, docket entry 97, p. 2).

Plaintiff's amended complaint was filed on November 24, 2009 (docket entry 74).  The amended complaint named as defendants: CMS; Dr. Myriam Sterlin, a CMS Supervisory Physician; Dr. Deborah Carroll, Medical Director of Northern State Prison; Dr. George Achebe, CMS Supervisory Physician; Dr. Adedayo Odunsi, CMS Supervisory Physician, Dr. Rizana Naveed Hamid, CMS Supervisory Physician; Nurse Patricia Stephens, CMS Nurse Practitioner; Devon Brown, the acting Commissioner of the DOC; Roy Hendricks, the Administrator of the New Jersey State Prison; Lydell Sherrer, the Administrator of the Northern State Prison; and various John Doe defendants.

On December 18, 2009, defendants Carroll, CMS, and Sterlin filed an Answer (docket entry 82).  On February 26, 2010, defendants Hendricks and Sherrer filed a motion to dismiss (docket entry 92).  On March 4, 2010, defendant Hamid filed an Answer (docket entry 93).

On March 29, 2010, attorney for the State Defendants wrote a letter to the Court, noting all parties' consent, requesting withdrawal of the February 26, 2010 motion to dismiss, and an extension of time to answer or otherwise move as to all three State Defendants (Hendricks, Sherrer, and Brown).

On April 27, 2010, defendant Achebe filed an answer (docket entry 102).  On April 30, 2010, defendants Brown, Hendricks, and Sherrer filed a motion to dismiss, and in the alternative for summary judgment (docket entry 106).  On August 16, 2010, defendant Odunsi filed an Answer (docket entry 117).

The two motions filed by the State Defendants on February 26 and April 30 remain pending on this docket.

**B.   The Amended Complaint**

The facts of this case are set forth at length in Plaintiff's amended complaint (docket entry 74).  To summarize, Plaintiff alleges that on October 31, 2002, while incarcerated in Florida, he underwent surgery to repair a fracture to his left pinky finger.  The following day, Plaintiff was transferred from Florida to the New Jersey Department of Corrections, where he was

received at the Central Reception and Assignment Facility
("CRAF") for processing.  Upon his arrival at CRAF, Plaintiff
underwent several extensive medical examinations, and informed
medical professionals that he had had surgery on his pinky
finger, and would need continuing care for his finger.

On November 5, 2002, Plaintiff requested and was approved
for an orthopedic consult.  For two and a half months after, from
November 5, 2002 through January 23, 2003, Plaintiff did not
receive the consult.  On January 23, 2003, when he did receive
the consult, the orthopedist diagnosed Plaintiff with a
"Boutouniere deformity" and recommended that Plaintiff receive
physical therapy and other treatment.

Three weeks later, defendant Dr. Sterlin, the supervising
doctor at defendant CMS, reviewed the orthopedist's
recommendations and ordered Plaintiff to begin physical therapy.
Although Plaintiff was also to receive a prosthetics consult, Dr.
Sterlin did not request said consult.

On February 18, 2003, xray results revealed that Plaintiff's
pinky joint had been fused together and the fracture line
remained visible.  On March 10, 2003, Dr. Sterlin ordered that
Plaintiff continue physical therapy.  No prosthetic consultation
had taken place.  On May 1, 2003, Plaintiff was seen by a Nurse
Practitioner for difficulty moving his finger.  Despite his
condition worsening, he was told to continue with physical

6

therapy and his medications.  On May 13, 2003, the Nurse
Practitioner ordered an orthopedic consult.  Plaintiff was not
seen for the prosthetic consult until July 24, 2003.  Plaintiff
did not receive the splint until September 30, 2003.

Plaintiff's follow up orthopedic consult took place on
October 30, 2003, but x-rays were not available so the
appointment had to be rescheduled.  The consult finally took
place on November 19, 2003.  It was recommended that Plaintiff
consult with a hand surgeon.  On December 10, 2003, Plaintiff was
seen for an orthopedic consult with a doctor who recommended
amputation.  Plaintiff consented to the recommendation.

Two months later, in February 2004, Plaintiff inquired about
his treatment for his finger because he was in pain.  After
various inquiries and pre-surgery tests, Plaintiff's finger was
amputated on March 18, 2004.  Plaintiff contends that during the
time from November 2002 through March 2004, Plaintiff suffered
from severe pain in his finger, that he otherwise would not have
suffered but for Defendants' failure to provide him with proper
and timely care.

Plaintiff alleges that the State Defendants, and other named
defendants violated his Eighth Amendment right to medical care,
that defendant CMS negligently trained and failed to supervise
medical staff, and that defendant CMS breached its contract to

provide adequate medical services.  He asks for monetary relief, and any other relief that the Court finds just.

## DISCUSSION

**A.**   **The Motions**

    **1.**   **Motion to Dismiss filed February 26, 2010.**

Defendants Roy Hendricks and Lydell Sherrer ask this Court to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  They argue that the claims against these defendants, the "State Defendants," must be dismissed because the suits against them in their official capacities are barred by the Eleventh Amendment, and because they are not "persons" for purposes of § 1983; the claims are based solely on an impermissible theory of respondeat superior; and because Plaintiff did not file a notice of tort claim in accordance with New Jersey law.

Plaintiff opposed the motion, arguing that the claims against the State Defendants are based on personal involvement; discovery is still ongoing and will reveal additional facts to support Plaintiff's claims against these defendants; and ask the Court that if it does rule in favor of the State Defendants, the Court should allow Plaintiff to file a second amended complaint

rather than dismiss.  Plaintiff also notes that he did file a Tort Claims Notice, and that punitive damages are appropriate.[1]

### 2. **Motion to Dismiss, or in the alternative, for Summary Judgment, filed on April 30, 2010.**

In the Motion to Dismiss, or in the alternative for Summary Judgment, the State Defendants argue the same issues as in the previously filed motion, and argue that the State Defendants did not breach any duty of care to Plaintiff; Plaintiff did not provide proper notice of the tort claim; and that the Court should not exercise supplemental jurisdiction over the state law claims.

Plaintiff opposes the motion.  In addition to the reasons for opposing the original motion to dismiss, Plaintiff's argues that summary judgment is inappropriate because discovery is precluded due to the pending motion to dismiss, and Plaintiff's have not yet had the opportunity to hear directly from the State Defendants.

---

[1] As noted, the parties had consented to withdraw the first filed motion to dismiss.  It appears that request was never executed, as the motion remains pending on the docket.  By this Opinion and the attached Order, the Court will grant the request to withdraw the first motion, and address the claims of the second filed motion to dismiss, or in the alternative, for summary judgment.

**B.**   **Standard of Review**

   **1.**   **Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis.  See Ashcroft v. Iqbal, -- U.S. --, --, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions.  See Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at

1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense."  Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

### 2.  **Summary Judgment**

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986); <u>Pennsylvania Coal Ass'n v. Babbitt</u>, 63

F.3d 231, 236 (3d Cir. 1995); <u>Hancock Indus. v. Schaeffer</u>, 811

F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides,

in relevant part:

> When a motion for summary judgment is made and
> supported as provided in this rule, an adverse party
> may not rest upon the mere allegations or denials of
> the adverse party's pleading, but the adverse
> party's response, by affidavits or as otherwise
> provided in this rule, must set forth specific facts
> showing that there is a genuine issue for trial.  If
> the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against
> the adverse party.

Fed. R. Civ. P. 56(e).  The rule does not increase or decrease a

party's ultimate burden of proof on a claim.  Rather, "the

determination of whether a given factual dispute requires

submission to a jury must be guided by the substantive

evidentiary standards that apply to the case." <u>Anderson</u>, 477

U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on

all properly supported issues identified in its motion, except

those for which the nonmoving party has provided evidence to show

that a question of material fact remains.  <u>See</u> <u>Celotex</u>, 477 U.S.

at 324.  Put another way, once the moving party has properly

supported its showing of no triable issue of fact and of an

entitlement to judgment as a matter of law, for example, with

affidavits, which may be "supplemented . . . by depositions,

12

answers to interrogatories, or further affidavits," id. at 322
n.3, "its opponent must do more than simply show that there is
some metaphysical doubt as to the material facts." Matsushita,
475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S.
at 247-48 (stating that "[b]y its very terms, this standard
provides that the mere existence of *some* alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no *genuine* issue of *material* fact.").

What the nonmoving party must do is "go beyond the
pleadings and by [its] own affidavits, or by the 'depositions,
answers to interrogatories, and admissions on file,' designate
'specific facts showing that there is a genuine issue for
trial.'" Celotex, 477 U.S. at 324; see also Lujan v. National
Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he
object of [Rule 56(e)] is not to replace conclusory allegations
of the complaint . . . with conclusory allegations of an
affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v.
BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert.
denied, 507 U.S. 912 (1993)(stating that "[t]o raise a genuine
issue of material fact, . . . the opponent need not match, item
for item, each piece of evidence proffered by the movant," but
must "exceed[] the 'mere scintilla' threshold and . . . offer[] a
genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue."  L. Civ. R. 56.1.  "Where possible, a single joint Rule 56.1 statement is favored."  Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted).  "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'"  Id. at 193 (citations omitted).  However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error."  Id. (citation omitted).[2]

## C.  42 U.S.C. § 1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

_____

[2] The Court notes that the State Defendants have filed a Statement of Material Facts, to which Plaintiff responded (docket entries 106-5, 110).

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**D.   Analysis**

The Iqbal Court made clear that a government official sued in his or her individual capacity for alleged constitutionally tortious behavior cannot be held liable on a respondeat superior theory or on the basis of some general link to allegedly responsible individuals or actions.  See Iqbal, 129 S. Ct. at 1948-49 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior .... [A] plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution.... [P]urpose rather than knowledge is required to impose [constitutional] liability on ... an official charged with violations arising from his or her superintendent responsibilities"); accord, e.g., Richards v. Pennsylvania, 196 Fed. App'x 82, 85 (3d Cir. 2006) (the court, in

Section 1983 action alleging excessive force in arrest, agreed with a magistrate judge that plaintiff's "failure to allege personal involvement on the part of defendant [who was the deputy warden] proved fatal to [plaintiff's] claims"); Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) ("[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" in order to be liable) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)); Johnstone v. United States, 980 F. Supp. 148, 151-52 (E.D. Pa. 1997) (court sua sponte dismissed claims against government official because "there is no indication" that the officer "had any personal involvement in the alleged constitutional deprivations," and plaintiff therefore could not "prove any set of facts that would entitle him to relief against [the officer]").

In this case, Plaintiff alleges personal involvement by the State Defendants based on the fact that: "Defendants knew or should have known that by failing to provide adequate health care after having been repeatedly put on notice that care, treatment and medication was needed, they were in violation of Plaintiff's Civil Rights to be afforded with the basics of medical care and treatment, and that they were obligated by their office to heed that cry for medical care and treatment with no less attention than that which would have been provided if the cry had been for physical help from danger."  (Plaintiff's Opposition Brief,

16

docket entry 108, at pp. 7-8).  Plaintiff also contends that
personal involvement is asserted because the State Defendants
created and implemented policies and procedures that were
constitutionally deficient; Administrative Remedy Forms were
addressed to defendant Sherrer; that the contract between CMS and
the NJDOC "is replete with additional instances indicating the
NJDOC and its personnel were involved with the medical services
provided by CMS and the private Defendants, were made aware of
complaints and requests for treatment, and were directly involved
with the creation and implementation of policies." (Plaintiff's
Opposition Brief, docket entry 108, at p. 11).  Finally,
Plaintiff contends that because discovery is not complete,
dismissal is not warranted.

The State Defendants argue that Plaintiff is trying to
supplement his amended complaint with his opposition brief.  They
point out that the Amended Complaint makes no mention of the
State Defendants, and that Plaintiff does not allege that the
State Defendants were personally involved in Plaintiff's ongoing
medical treatment.  The State Defendants cite to <u>Durmer v.
O'Carroll</u>, 991 F.2d 64 (3d Cir. 1993) and <u>Spruill v. Gillis</u>, 372
F.3d 218 (3d Cir. 2004) for support for their argument that the
case against the State Defendants must be dismissed.  Plaintiff
argues that these cases can be factually distinguished from
Plaintiff's case.

In Durmer, the Court of Appeals for the Third Circuit held that summary judgment was proper with respect to the defendant Warden, and the DOC Commissioner with regard to Plaintiff's medical claims, because: "The only allegation against either of these two defendants was that they failed to respond to letters Durmer sent to them explaining his predicament.  Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."  Durmer, 991 F.2d at 69 (footnote omitted).

In Spruill, the Court of Appeals for the Third Circuit found:

> Although Durmer was decided at the summary judgment stage, its holding can be readily imported into the motion-to-dismiss stage: If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.  This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.  Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.  Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.
>
> Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official like Gooler

18

> will not be chargeable with the Eighth Amendment
> scienter requirement of deliberate indifference.  Thus
> dismissal of Spruill's claims against Gooler after the
> point at which Spruill was first under medical care is
> appropriate because Spruill bears the burden of proving
> (and hence pleading) facts supporting the defendants'
> mental states, see Singletary v. Pa. Dep't of Corr.,
> 266 F.3d 186, 192 n.2 (3d Cir. 2001), and he has failed
> to so plead with respect to Gooler.

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)(footnote

omitted).

In this case, the only assertion by Plaintiff that the State

Defendants had any knowledge of his specific, personal medical

care is that administrative remedy forms were addressed to

defendant Sherrer.  Whether or not policies were implemented, and

contracts executed between CMS and the New Jersey Department of

Corrections is irrelevant to the matter at hand.  Plaintiff has

not pled in his amended complaint that the State Defendants were

personally involved in the alleged constitutional violations

against Plaintiff.[3]

Consequently, Plaintiff's assertions that the State

Defendants held certain supervisory positions or had knowledge of

the alleged wrongs are insufficient, since Plaintiff failed to

assert facts showing purposeful personal involvement by each

State Defendant.  See Iqbal, 129 S. Ct. at 1948-49.

---

[3] Plaintiff's amended complaint also fails to allege
violations of common law state claims against these State
Defendants.  Therefore, this Court will also dismiss any state
law claims, without prejudice, to Plaintiff filing a motion to
amend in compliance with the attached Order.

## CONCLUSION

For the foregoing reasons, the State Defendants' motion to dismiss is granted.  The dismissal of the State Defendants will be without prejudice to Plaintiff filing a motion to amend the complaint, in accordance with the court rules, should he so desire.  An appropriate Order accompanies this Opinion.

/s/ Garrett E. Brown, Jr.

GARRETT E. BROWN, JR., Chief Judge
United States District Court

Dated: September 13, 2010